CONN KAVANAUGH
CONN KAVANAUGH ROSENTHAL PEISCH & FORD, LLP

Michael J. Rossi
(617)348-8215
mrossi@connkavanaugh.com

June 22, 2026

**By Email**
Amy Garniss, Esq.
Garniss Law Office
79 Bridge Street, Suite E
Beverly, MA 01915

Re: Engagement

Dear Amy:

We sincerely appreciate the opportunity to represent you and the Garniss Law Office in connection with bar disciplinary matters. We have found it beneficial to explain to our clients the terms under which we undertake and will continue legal representation, including the fee arrangements. This letter, along with the enclosed General Terms and Conditions, shall govern our engagement.

Determination of Fees and Expenses. Our fees generally are determined by the amount of time spent by our professional staff (attorneys and paralegals) at the standard hourly rates, in effect from time to time, for the individual professionals involved. The blend of the categories of professional personnel and their respective hourly rates depend on the seriousness and complexities of the problem, the skill and experience of the lawyers and paralegals performing the work, and the time pressures for completion of particular tasks. In general, we attempt to use, in any particular instance, the person with the lowest hourly rate available to perform and capable of performing the work required. Work will be delegated within the firm where possible and appropriate, to ensure proper use of each individual's expertise and talent and to provide effective coverage of your needs in the circumstances.

Billing Practices. I will be the principal attorney in this matter at our firm. My colleague, Daniel Walsh-Ragalski will assist. As described in greater detail in the enclosed General Terms and Conditions, the firm will provide to you monthly statements, including itemized descriptions of all work performed (broken down to increments of 1/10th of an hour) and expenses incurred. Our firm statements will be based upon my discounted hourly rate of $480 and Daniel's discounted rate of $280. If any other attorneys work on the matter, their time will be billed at their standard hourly rates. Our statements also will list all out-of-pocket expenses incurred on your behalf. If you ever have any questions about any of our statements, I trust you will not hesitate to discuss them with me. We regard open communication as essential in developing and maintaining a good attorney/client relationship.

Lyndon Southern Insurance Company (Lyndon) has agreed to pay the legal fees incurred on your behalf in connection with this matter, up to a maximum of $50,000, pursuant to the terms and conditions of your Lawyer's Professional Liability Policy. Accordingly, we will submit our invoices for fees and costs directly to Lyndon, with a copy provided to you for your records. In the event Lyndon declines to pay any invoice, in whole or in part, for any reason — including but not limited to a coverage dispute, a reservation of rights, or exhaustion of the policy limit — we will look to you directly for payment of any such amounts not satisfied by the carrier.

If the terms and conditions described above and in the enclosed General Terms and Conditions are satisfactory to you, please indicate your acceptance by signing a copy of this letter and returning it to my attention. When we have received the signed acknowledgement copy of this letter from you and the initial retainer, we will consider that we have made a binding agreement with you on the terms set forth above.

I genuinely appreciate your looking to me and to the firm to advise you on this important matter, and I look forward to working with you.

Very truly yours,

Michael J. Rossi

I have read and understood the Engagement and Fee Agreement set forth above along with the enclosed General Terms and Conditions, and I agree to all such terms and conditions.

________________________________________
Amy Garniss, Esq.

**CONN KAVANAUGH ROSENTHAL PEISCH & FORD, LLP**

GENERAL TERMS AND CONDITIONS

The following General Terms and Conditions are hereby expressly incorporated into and are part of the Engagement Letter entered into by and between Conn Kavanaugh Rosenthal Peisch & Ford, LLP (the "Firm") and the Client identified in the Engagement Letter. In the event there is a conflict between any of these General Terms and Conditions and the Engagement Letter, the terms set forth in the Engagement Letter will govern with respect to the particular provision.

**1.** **Identity of Client**. The Firm undertakes to represent only the person(s) and/or entity(ies) it has expressly agreed to represent and has acknowledged or identified as its Client(s) in the Engagement Letter. For example, to the extent any Client has incorporators, promoters, organizers, shareholders, partners, members, directors, officers, employees, subsidiaries, parents, affiliates, family members, related interests, insureds, or insurers, the Firm does not undertake to represent such persons or entities unless otherwise expressly agreed by the Firm in the Engagement Letter.

**2.** **Attorney's Fees**. The Firm's attorney's fees are billed on an hourly basis based upon the factors considered relevant under the rules of professional conduct enforced in Massachusetts. The principal factors in determining our fees are the time and effort devoted to the matter, along with the hourly billing rate of the timekeeper(s) who work on the matter. The hourly billing rates for attorneys, paralegals, and other employees in the Firm vary. Our rates are subject to increase annually on January 1st. We will notify you in writing of any such changes in rates occurring after this engagement begins.

**3.** **Costs and Expenses**. Beyond hourly fees, certain expenses may be incurred in the Firm's representation of the Client. Examples of expenses that may be incurred are travel expenses, filing fees, messenger fees, charges for obtaining copies of records, photocopying expenses from outside vendors, court reporter expenses, and similar items. Any expenses that are incurred by the Firm on the Client's behalf will be itemized and shown on the Client's bills, and are payable under the same terms of the Firm's fees. Although the Firm may elect from time to time to advance certain expenses for the Client, it is not under any obligation to do so, and the Firm reserves the right to request that Client pay expenses directly.

**4.** **Billing and Payment**.

(a) As a general rule, the Firm delivers billing statements within the first three weeks of every month. Invoices will describe services rendered and expenses incurred through the preceding month. Unless otherwise set forth in the Engagement Letter, the Firm's statements will indicate the nature of the work done to the date shown on the statement, the fees for those services, and the expenses incurred by the Firm on the Client's behalf.

(b) Statements are due and payable upon issuance, and are to be paid not later than thirty (30) days following the date of the invoice. If the Client has any concerns or questions about a bill, the Firm must be notified promptly so that any issues can be addressed and resolved in a timely manner. If the Firm does not hear from the Client with concerns or questions about the content or amount of any bill within thirty (30) days of issue, any future objections to the bill will be deemed waived, and the Firm will expect the bill to be paid in full in a timely manner. In the event any billing statement remains unpaid for more than thirty (30) days, the Firm reserves the right to suspend performing any further services until satisfactory arrangements have been made for payment of outstanding bills and future bills. If such arrangements are not made, the Client agrees that the Firm may elect to terminate the engagement, and the Client will not oppose withdrawal from the representation, subject to the Firm's responsibilities under applicable rules of professional conduct.

(c) All payments should be made payable to Conn Kavanaugh Rosenthal Peisch & Ford, LLP via check and mailed to One Federal Street, 15th Floor, Boston, MA 02110, or via ACH to:

South Shore Bank
1530 Main Street
Weymouth, MA 02190
ABA #211371447
IOLTA Account 2277000960

If you have any questions about our bills or your options for payment, please reach out to our accounting department at ckaccounting@connkavanaugh.com or 617.482.8200.

**5.** **Estimate of Fees and Expenses**. If requested, the Firm may from time to time, for the Client's convenience, furnish estimates of fees or expenses that it anticipates will be incurred. Any such estimates are subject to unforeseen circumstances, and are by their nature inexact. As a result, the actual fees and expenses most likely will be more or less than any estimate. No fee estimate provided to the Client shall be deemed or construed to establish a fixed or maximum fee, and the Firm will not otherwise be bound by any estimate, unless expressly otherwise provided in the Engagement Letter, or other written agreement between the Firm and the Client.

**6.** **Outcome and Non-Contingency**. The Firm endeavors to serve all clients in a diligent, capable, and professional manner. However, the Firm cannot guarantee the outcome of any given matter for which it has been retained. The Firm therefore has not provided the Client with any assurance as to the outcome. Unless specifically provided in the Engagement Letter, payment for the Firm's services is not contingent upon the outcome of any matter. Regardless of the outcome of the matter for which the Firm has been retained, the Client will be obligated for the timely payment of the Firm's fees and expenses.

**7. Termination of Engagement; Withdrawal of the Firm**.

(a) The Firm's engagement may be terminated by the Client or the Firm at any time. In the event Client or the Firm terminates the engagement, the Client will remain responsible for paying all of the Firm's legal fees and expenses for work performed through termination.

(b) If the Firm or the Client wishes at any time to terminate the representation, notice of the termination must be sent in a writing that specifies the effective date of the termination. Upon termination or withdrawal, all of the Firm's duties to the Client shall cease, except for duties of confidentiality and other duties owed to former clients generally under applicable rules of professional conduct.

(c) Unless otherwise terminated as set forth herein, our attorney-client relationship will be considered terminated upon our completion of the specific services that the Client has retained us to perform, or if open-ended services are agreed upon, when more than one year has elapsed from the last time the Firm furnished any billable services to the Client. If the Client later requests that the Firm perform further or additional services, our attorney-client relationship will be revived, subject to an Engagement Letter and these General Terms and Conditions. The fact that the Firm may inform the Client from time to time of developments in the law should not be understood as a revival of an attorney-client relationship. Moreover, the Firm has no obligation to inform the Client of such developments in the law unless the Firm is engaged in writing to do so.

(d) The Firm will inform the Client in advance if it wishes to withdraw from the representation and, if possible, the Firm will afford the Client a reasonable opportunity to hire successor counsel. The Firm ordinarily will not terminate a client relationship except for good reason. Examples, of course, include, but are not limited to, an actual or threatened conflict of interest, failure of the Client to be cooperative or truthful, a fundamental unresolvable disagreement over tactics and actions, non-payment of legal bills, or other circumstances that in our judgment impair our ability to represent the Client in accordance with our ethical responsibilities under applicable rules of professional conduct.

**8. Completion of Services**. Upon completion of the Firm's services with respect to a given matter, the Firm will have no further obligation to advise or represent the Client. This includes but is not limited to advising the Client with respect to subsequent changes in the law or facts relevant to such matter, unless the Client has requested in writing, and the Firm has agreed in writing, to provide ongoing advice or representation with respect to one or more matters.

**9. Document Retention and Destruction**. After this engagement has ended, it is the Client's obligation to request from us any electronic or hard copy files belonging to the Client that pertain to work performed on the Client's behalf. If a Client does not request files, we will retain such records as we deem appropriate in accordance with our records retention

policy. Under our current policy, after an engagement has ended, we can only assure retention of documents preserved by an attorney of the Firm during the course of an engagement in an electronic file or hard copy file that said attorney has specifically segregated and designated as belonging to a specific Client engagement. Under our current policy, we will retain indefinitely and not destroy without Client permission only the following documents: (a) original copies of wills, trusts, and other personally executed estate planning documents, (b) original hard copies of executed documents evidencing title to or an interest in real estate, and (c) original signed or certified paper copies of contracts that you have asked in writing to retain in their original form. All other types of documents preserved by an attorney of the Firm during the course of an engagement in an electronic file or hard copy file that said attorney has specifically segregated and designated as belonging to a specific Client engagement are normally held by us for ten (10) years from the time the engagement has ended. Prior to ten (10) years, other than the original documents described above, we may discard paper copies at any time and, at our election, preserve documents electronically. If a Client does not request copies of files or specific documents before the end of our ten (10) year retention period, once that period expires, we will have no further obligation to retain the files and may in our discretion destroy the files without further notice to the Client.

**10.** **<u>Communications by Email</u>**. While it has become commonplace for lawyers and clients to communicate by email or other electronic means, the Client should be aware that email and other forms of electronic communication may not be a secure method of communication, and that there is a risk that an email or other electronic communications could be accessed or intercepted en route between the sender's and intended recipient's computers, or otherwise read by third parties having authorized or unauthorized access to the sender's or the recipient's computer or a network to which it is connected. The Firm understands that the Client accepts these risks and approves of the use of email or other electronic communications between the Firm and the Client.

**11.** **<u>Dispute Resolution</u>**. In the event the Client and the Firm are unable to resolve any differences concerning fees and/or expenses owed by the Client to the Firm, the parties agree to make a good faith effort to resolve those differences through direct discussion. If those differences cannot be resolved through direct discussion, the parties agree to place the matter before the Fee Arbitration Board of the Massachusetts Bar Association, or a similar fee dispute resolution body, and further agree that an award in such matter may be filed in a court with competent jurisdiction, and judgment may enter thereon.